```
1              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF MICHIGAN
2                   SOUTHERN DIVISION

3    UNITED STATES OF AMERICA,

4              Plaintiff,

5     v                              No. 19-CR-20026

6

7    SANTOSH REDDY SAMA,

              Defendant.
8    _____/

9
                         PLEA HEARING
10
              BEFORE THE HONORABLE GERSHWIN A. DRAIN
11              UNITED STATES DISTRICT JUDGE
              Theodore Levin United States Courthouse
12              231 West Lafayette Boulevard
                      Detroit, Michigan
13              Wednesday, May 15, 2019

14   APPEARANCES:

15
       For the Plaintiff:      MR. RONALD WATERSTREET
16                             MR. TIMOTHY MCDONALD
                               MR. BRANDON HELMS
17                             United States Attorney's Office
                               211 W. Fort Street, Suite 2001
18                             Detroit, Michigan  48226
                               (313) 226-9100
19                             (313) 226-0221
                               (313) 226-9639
20
       For the Defendant:      MR. VICTOR MANSOUR
21                             Mansour Law, PC
                               32121 Woodward Ave., Suite PH
22                             Royal Oak, Michigan  489073
                               (248) 579-9800
23

24   Reported by:             Merilyn J. Jones, RPR, CSR
                               Official Federal Court Reporter
25                             merilyn_jones@mied.uscourts.gov
```

TABLE OF CONTENTS

**WITNESSES:  PLAINTIFF**                                    **PAGE**
None

**WITNESSES:  DEFENDANT**
None

**OTHER MATERIAL IN TRANSCRIPT:**
Proceedings                                                    3

**EXHIBITS:**                    Identified              Received
None

```
 1                    Detroit, Michigan
 2                    Wednesday, May 15, 2019 - 10:59 a.m.
 3                    THE CASE MANAGER:  All rise.  The United States
 4      District Court for the Eastern District of Michigan is now in
 5      session.  The Honorable Gershwin A. Drain presiding.
 6                    You may be seated.
 7                    The court calls the criminal matter United States
 8      of America versus Santosh Reddy Sama.  Case Number
 9      19-CR-20026-5.
10                    Counsel, please state your appearances for the
11      record.
12                    MR. WATERSTREET:  Good morning, your Honor.
13      Ronald Waterstreet appearing on behalf of the United States,
14      along with Brandon Helms and Timothy McDonald.
15                    THE COURT:  All right.  Good morning.
16                    MR. HELMS:  Good morning.
17                    MR. MCDONALD: Good morning, your Honor.
18                    MR. MANSOUR:  Good morning, judge.  May it please
19      this Honorable Court, Victor Mansour on behalf and with Mr.
20      Sama, he's standing directly to my left.
21                    To his left is the interpreter, who he will
22      introduce himself, because I don't want to embarrass him by
23      mispronouncing his name.
24                    THE COURT:  Okay.
25                    THE INTERPRETER:  Good morning.
```

```
 1                    THE COURT:  Good morning.

 2                    THE INTERPRETER:  My name is Jogeswara Rao

 3   Peddiboyina. I can go by Joe.

 4                    THE COURT:  Okay.

 5                    THE INTERPRETER:  I will do my best to interpret

 6   the Telegu language.

 7                    THE COURT:  Okay.  I'm going to have my case

 8   manager to administer the interpreter's oath to you.

 9                    THE CASE MANAGER:  Do you solemnly swear that you

10   will translate the oath in such questions as shall be put to

11   this defendant from the English language to the Telegu language

12   and answer from the Telegu language to the English language to

13   the best of your ability?

14                    THE INTERPRETER:  Yes.

15                    THE CASE MANAGER:  Thank you.

16                    MR. MANSOUR:  And, judge, just for a point of

17   clarification, Mr. Sama and I have been able to communicate

18   most of the time without an interpreter.

19                    THE COURT:  Okay.

20                    MR. MANSOUR:  There are some words, obviously, in

21   legal English that are difficult for him to comprehend and

22   understand.

23                    If it's okay with the Court, I'll propose on an as

24   needed basis for the interpreter, and I think that would be

25   best.
```

1          And I just want to make sure if the Court is okay

2     with it, I can have that okayed for my client?

3               THE COURT:  I am.

4          And is your client okay with it just so we know?

5               MR. MANSOUR:  Are you okay with the interpreter on

6     an as needed basis?

7               THE DEFENDANT:  Yes.

8               THE COURT:  Okay.  All right.  Why don't you two

9     approach, all three of you approach the podium.

10         All right.  Mr. Mansour, so as I understand it,

11    your client, Mr. Sama, wants to tender a plea of guilty to the

12    charge in the indictment; is that correct?

13              MR. MANSOUR:  Yes, your Honor.

14              THE COURT:  Okay.

15         All right.  And, again, this is a case where

16    there's no Rule 11 Plea Agreement; is that correct?

17              MR. WATERSTREET:  Correct.

18              MR. MANSOUR:  Correct.

19              MR. WATERSTREET:  One was tendered, but it was

20    rejected, and as part of the colloquy, if the Court could go

21    through that, I'd appreciate that as well.

22              THE COURT:  All right.  So, let's see, Mr. Sama,

23    I'm going to have my case manager administer an oath to you on

24    the case, and let me just say, don't hesitate to stop me and

25    get some clarification if I say something that you don't

```
 1    understand.

 2              THE DEFENDANT:  Okay, sir.

 3              THE CASE MANAGER:  Raise your right hand, please.

 4    Do you solemnly swear or affirm the testimony you're about to

 5    give to the Court in this matter here pending shall be the

 6    truth, the whole truth, and nothing but the truth?

 7              THE DEFENDANT:  Yes.

 8              THE CASE MANAGER:  You have to speak up.

 9              THE DEFENDANT:  Yes.

10              THE CASE MANAGER:  Please state your full name for

11    the record.

12              THE DEFENDANT:  Santosh Reddy Sama.

13              THE COURT:  All right.  Mr. Sama, I'm going to ask

14    you a lot of questions.  I know that your attorney has reviewed

15    most of these matters, if not all the matters, with you

16    already, but the law requires that I go over things again with

17    you here in court on the record.

18              THE DEFENDANT:  Okay, sir.

19              THE COURT:  All right.  So try to keep your voice

20    up so I can hear you and my court reporter who's to my left can

21    also hear you.

22              THE DEFENDANT:  Okay, sir.

23              THE COURT:  So, Mr. Sama, do you understand if you

24    are under oath and if you answer any of my questions falsely,

25    your answers may later be used against you in a separate
```

```
 1   prosecution for perjury or false statement; do you understand

 2   that?

 3             THE DEFENDANT:  Okay, sir.

 4             THE COURT:  And what's your full name again?

 5             THE DEFENDANT:  Santosh Reddy Sama.

 6             THE COURT:  Okay.  And how old are you?

 7             THE DEFENDANT:  I'm 29 years old.

 8             THE COURT:  And how far did you go in school?

 9             THE DEFENDANT:  I completed my Master's Degree.

10             THE COURT:  Okay.  And did you complete your

11   Master's Degree here in this country or in your native country?

12             THE DEFENDANT:  In this country in California.

13             THE COURT:  Okay.

14             THE DEFENDANT:  But it got invalid.

15             THE COURT:  I didn't hear the last part.

16             THE DEFENDANT:  My Master's Degree got invalid.

17             THE COURT:  Okay.

18             MR. MANSOUR:  Did you catch that?

19             THE COURT:  I didn't catch the last two words.

20             MR. MANSOUR:  His Master's Degree was invalid

21   after he completed it here in this country.

22             THE COURT:  Okay.  Thank you.

23             So, is it fair to say, Mr. Sama, that you can read

24   and write and understand English pretty well?

25             THE DEFENDANT:  Yes, sir.
```

1          THE COURT:  Okay.  And, again, if I say anything

2    that you don't completely understand, stop me and I'll try to

3    explain it in a little more detail with the interpreter.

4          THE DEFENDANT:  Okay, sir.

5          THE COURT:  Okay.  All right.  And so, have you

6    been treated recently for any type of mental illness or

7    addiction to drugs or alcohol?

8          THE DEFENDANT:  No, sir.

9          THE COURT:  And are you currently under the

10   influence of any drugs, medication, or acholic beverage?

11         THE DEFENDANT:  No, sir.

12         THE COURT:  And have you had a chance to look at

13   the indictment that's been returned against you and some other

14   people?

15         THE DEFENDANT:  Yes, sir.  Yes, sir.

16         THE COURT:  Okay.  And have you had a chance to

17   talk to Mr. Mansour about it?

18         THE DEFENDANT:  Yes, sir.  I talked to him.

19         THE COURT:  And has he been able to answer any

20   questions you've had about it?

21         THE DEFENDANT:  Yes, sir, he did.

22         THE COURT:  And are you satisfied with the advice

23   and counsel you received from him up to this point?

24         THE DEFENDANT:  Yes, sir, I am satisfied.

25         THE COURT:  Okay.

1                And so, do you understand that the normal maximum

2    sentence for this offense is a sentence of up to five years in

3    prison; do you understand that?

4                THE DEFENDANT:  Yes, sir.

5                THE COURT:   And also there's a potential fine in

6    the case that could be anywhere from zero up to $250,000; do

7    you understand that?

8                THE DEFENDANT:  Yes, sir.

9                THE COURT:  And also there is a potential period

10   of supervised release which could be up to three years; do you

11   understand that?

12               THE DEFENDANT:  Yes, sir.

13               THE COURT:   Okay.  And so do you feel like you

14   understand the possible penalties involved in the case?

15               THE DEFENDANT:  Yes, sir.

16               THE COURT:  Okay.  And then, you should know that

17   I'm also required to impose a special assessment in your case

18   of $100; do you understand that?

19               THE DEFENDANT:  Yes, sir.

20               THE COURT:  Okay.  And so have there been any

21   promises made to you about this plea that is part of your

22   guilty plea here?

23               THE DEFENDANT:  No, sir.

24               THE COURT:  Okay.  And so you understand that if

25   any promises have been made, I haven't heard of them so I'm not

```
1    bound by anything, you understand that?
2              THE DEFENDANT:  Yes, sir.
3              THE COURT:  Has anyone forced you to plead guilty?
4              THE DEFENDANT:  No, sir.
5              THE COURT:  Has anyone threatened you and told you
6    that you must enter this plea?
7              THE DEFENDANT:  No, sir.
8              THE COURT:  And are you doing it freely and
9    voluntarily?
10             THE DEFENDANT:  Yes, sir.
11             THE COURT:  And are you pleading guilty because
12   you are guilty?
13             THE DEFENDANT:  Yes, sir.
14             THE COURT:  All right.  And so you're a citizen of
15   what country?
16             THE DEFENDANT:  India, sir.
17             THE COURT:  India?
18             THE DEFENDANT:  Yes, sir.
19             THE COURT:  And you are not a citizen of the
20   United States?
21             THE DEFENDANT:  Yes, sir.
22             THE COURT:  You mean, that's correct, you're not a
23   citizen of the U.S.?
24             THE DEFENDANT:  No, I'm not a citizen of the
25   United States.
```

1              THE COURT:  Okay.  All right.  And so, do you

2    understand that this plea of guilty is probably going to result

3    in you being removed or deported, you understand that?

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  And do you also understand that there

6    are also other consequences when you plead guilty to a felony,

7    you understand that?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  For example:

10             You can't hold certain offices.

11             You can't possess a firearm.

12             You can't get certain licenses.

13             There's a lot of additional consequences to having

14   a felony conviction in pleading guilty here, you understand

15   that?

16             THE DEFENDANT:  Okay, sir.  Yes.

17             THE COURT:  All right.  And do you have any other

18   cases pending or are you on probation or parole for any

19   offenses?

20             THE DEFENDANT:  No, sir.

21             THE COURT:  Okay.  All right.  And have counsel

22   computed Mr. Sama's potential guidelines here?

23             MR. WATERSTREET:  Yes, your Honor.  The United

24   States has determined his guidelines preliminarily are 41 to 51

25   months.

```
 1                    THE COURT:  Okay.

 2                    MR. MANSOUR:  And the defense disputes that.

 3                    THE COURT:  Okay.  What, Mr. Mansour, what do you

 4      believe the guidelines come to?

 5                    MR. MANSOUR:  I believe if -- I don't have it

 6      written down in front of me --

 7                    THE COURT:  Okay.

 8                    MR. MANSOUR:  -- but I believe it was 27 months,

 9      roughly, in that neighborhood.

10                    THE COURT:  Okay.

11                    MR. MANSOUR:  On a preliminary finding.  I still

12      have -- there are still some numbers that need to be more

13      accurately defined in order, it could be less.

14                    THE COURT:  Okay.

15                    MR. MANSOUR:  But based on what I'm aware of at

16      the moment, it's right around the 27-month mark.

17                    THE COURT:  All right.

18                    All right.  So, Mr. Sama, I'm going to end up

19      sentencing you down the road in several months, you understand

20      that?

21                    THE DEFENDANT:  Okay, sir.

22                    THE COURT:  And there's a lot of things that I

23      look at when I impose sentence.

24                    THE DEFENDANT:  Okay, sir.

25                    THE COURT:  And do you understand what guidelines
```

1    are?

2                    THE DEFENDANT:  Yes, sir.

3                    THE COURT:  Okay.  And do you understand that

4    there's a dispute about what they actually are?

5                    In other words, the government says they're one

6    thing and your lawyer says they're something else, you

7    understand that?

8                    THE DEFENDANT:  Yes, sir.

9                    THE COURT: And at the time of sentencing on your

10   case I'm going to decide exactly what they are; do you

11   understand that?

12                   THE DEFENDANT:  Okay, sir.

13                   THE COURT:  Okay.  So, I'll be looking at the

14   sentencing guidelines when I impose sentence.  I'll also be

15   looking at a pretty extensive presentence report that's going

16   to go into your background and your history.

17                   THE DEFENDANT:  Okay, sir.

18                   THE COURT:  And then, I'm also going to be looking

19   at law which says there are some very particular and specific

20   things I have to look at in terms of deciding what the sentence

21   should be; do you understand that?

22                   THE DEFENDANT:  Yes, sir.

23                   THE COURT:  All right.  So, again, I know that Mr.

24   Mansour has talked to you about your trial rights, but I'm

25   required to go over them again with you here in Court.

1          So, do you understand that if you wanted to you

2    could have a trial on this case and your trial could be by a

3    jury or you could have a trial by judge if the government and I

4    agreed; do you understand that?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:   And also at a trial you'd have the

7    right to be presumed innocent and the government would have to

8    prove you guilty beyond a reasonable doubt; do you understand

9    that?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  And then also at a trial Mr. Mansour

12    could represent you throughout the entire proceedings and do

13    all the things that lawyers do during the trial; do you

14    understand that?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT: And then the government would have to

17    bring in witnesses to testify against you and Mr. Mansour could

18    question and cross-examine those witnesses; do you understand

19    that?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  And then at a trial if you wanted to

22    testify, you could do so, or if you decided you didn't want to

23    testify, you could do that and your silence couldn't be used

24    against you in any way; do you understand that?

25          THE DEFENDANT:  Yes, sir.

1          THE COURT:  And then lastly as far as your rights

2     go, do you understand that if you wanted to call witnesses to

3     testify in your, on your behalf, I would help you bring in

4     witnesses with subpoenas; do you understand that?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Okay.  And so, Mr. Sama, is it pretty

7     clear to you that by entering this plea of guilty you will

8     stand convicted of the charge and there will be no trial on

9     your case; do you understand that?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  Okay.  All right.  And so, in this

12     case you are charged with conspiracy to commit visa fraud and

13     to harbor aliens for profit.

14          And the indictment charges that this occurred

15     sometime between February of 2017 and January of 2019, and so,

16     tell me what you did in this case that makes you guilty of this

17     offense?

18          And maybe as we've done in the past with these

19     cases, I can have either counsel question Mr. Sama to establish

20     the factual basis for the offense.

21          MR. WATERSTREET:  I'm prepared to do that.

22          THE COURT:  Okay.

23          MR. WATERSTREET:  May I proceed, your Honor?

24          THE COURT:  Yes.

25          MR. WATERSTREET:  Mr. Sama, you point out to the

    1    judge you're not a citizen here in the United States?

    2                    THE DEFENDANT:  Yes.

    3                    MR. WATERSTREET:  And you're a citizen of India?

    4                    THE DEFENDANT:  Yes, sir.

    5                    MR. WATERSTREET:  And you came over here on a F-1

    6    visa?

    7                    THE DEFENDANT:  Yes, sir.

    8                    MR. WATERSTREET:  Which is a student visa?

    9                    THE DEFENDANT:  Yes, sir.

   10                    MR. WATERSTREET:  So, you came from India, you

   11    went to the U.S. Consulate, got approval, got the visa,

   12    correct?

   13                    THE DEFENDANT:  Yes, sir.

   14                    MR. WATERSTREET:  And then you first came here to

   15    the United States in 2014 on an F-1 visa to attend Atlantis

   16    University down in Miami, correct?

   17                    THE DEFENDANT:  Yes, sir.

   18                    MR. WATERSTREET:  And you knew as a foreign

   19    student that your status to lawfully remain here in the United

   20    States was dependent upon you maintaining that status as a

   21    full-time student, correct?

   22                    THE DEFENDANT:  Yes, sir.

   23                    THE COURT:   You had to attend classes full time,

   24    correct.

   25                    THE DEFENDANT:  Yes, sir.

1    MR. WATERSTREET: And you had to make progress

2  toward completion of your full course of study, correct?

3    THE DEFENDANT: Yes, sir.

4    MR. WATERSTREET: And you're also familiar with

5  the form called the Form I-20?

6    THE DEFENDANT: Yes, sir.

7    MR. WATERSTREET: And I believe you have a number

8  of conversations with the undercover agents about these I-20

9  forms, correct?

10    THE DEFENDANT: Yes, sir.

11    MR. WATERSTREET: And you understand that these

12  I-20 forms not only allow you to come into the United States

13  initially when you applied and were accepted for Atlantis

14  University but if you wanted to transfer to another university,

15  right?

16    THE DEFENDANT: Yes, sir.

17    MR. WATERSTREET: And that is a very important

18  immigration document that you would need if you wanted to

19  travel outside of the United States and come back to the United

20  States, correct?

21    THE DEFENDANT: Yes, sir.

22    THE COURT: And that was part of the process of

23  maintaining your F-1 student visa status, correct?

24    THE DEFENDANT: Yes, sir.

25    MR. WATERSTREET: It allows you to apply for an

1    F-1 visa, correct?

2              THE DEFENDANT:  Yes, sir.

3              MR. WATERSTREET:  Proof that you're, your legal

4    and academic status, correct?

5              THE DEFENDANT:  Yes, sir.

6              MR. WATERSTREET:  Can be used as an entry document

7    for travelling?

8              THE DEFENDANT:  Yes, sir.

9              MR. WATERSTREET:  Allows you to participate in

10   practical training?

11             THE DEFENDANT:  Yes, sir.

12             MR. WATERSTREET:  And it's a document that is

13   obtained when you transfer from one school to another, correct?

14             THE DEFENDANT:  Yes, sir.

15             MR. WATERSTREET:  Now the judge pointed out that

16   this conspiracy took place between February of 2017 and January

17   of 2019?

18             THE DEFENDANT:  Yes, sir.

19             MR. WATERSTREET:  Okay.  You first had contact

20   with the University of Farmington back in February of 2017,

21   correct?

22             THE DEFENDANT:  Yes, sir.

23             MR. WATERSTREET:  And that's when you made a phone

24   call to the University of Farmington?

25             THE DEFENDANT:  Yes, sir.

1              MR. WATERSTREET:  And that University of

2      Farmington, for the benefit of the Court, is here in the State

3      of Michigan, right?

4              THE DEFENDANT:  Yes, sir.

5              MR. WATERSTREET:  In Farmington Hills, Michigan?

6              THE DEFENDANT:  Yes, sir.

7              MR. WATERSTREET:  And I believe, correct me if I'm

8      wrong, it was sometime February 13th that you called the school

9      to find out about attending the University of Farmington?

10             THE DEFENDANT:  I don't remember exact date, but

11     it's month of February.

12             MR. WATERSTREET:  Okay.  You don't remember the

13     exact date, right?

14             THE DEFENDANT:  Yeah.  I don't remember the exact

15     date, but it's month of February.

16             MR. WATERSTREET:  Okay.  And the purpose of your

17     phone call was to find out a little bit about this school and

18     you eventually told them that you really weren't here to learn,

19     go to the University of Farmington, you were there, going to

20     attend to maintain your status?

21             THE DEFENDANT:  Yes, sir.

22             MR. WATERSTREET:  And you learned at that point

23     the cost was going to cost, be $10,000 per year?

24             THE DEFENDANT:  Yes, sir.

25             MR. WATERSTREET:  But then you asked if there was

```
 1    a referral discount if you were able to get other students to

 2    sign up to come to the University of Farmington?

 3                  THE DEFENDANT:  Yes, sir.

 4                  MR. WATERSTREET:  And you negotiated that price to

 5    only $5,000 a year if you got other students to sign up?

 6                  THE DEFENDANT:  Yes, sir.

 7                  MR. WATERSTREET:  And you said you would call back

 8    in half an hour?

 9                  THE DEFENDANT:  I don't remember half an hour, but

10    I told him I would call back sometime -- I told him I'll call

11    back him.

12                  MR. WATERSTREET:  You don't dispute the fact you

13    were going to call back with some students that you would refer

14    to the school, correct?

15                  THE DEFENDANT:  Yes, sir.

16                  MR. WATERSTREET:  Okay.  And within a short period

17    of time you had a friend calling with you and enrolling in the

18    school?

19                  THE DEFENDANT:  Yes, sir.

20                  MR. WATERSTREET:  And you confirmed with the

21    undercover agent that you knew he was not going to be attending

22    classes?

23                  THE DEFENDANT:  Yes, sir.

24                  MR. WATERSTREET:  And the undercover agent told

25    you this was not approved by the Department of Homeland
```

```
 1    Security?

 2              THE DEFENDANT:  Yes, sir.

 3              MR. WATERSTREET:  And that you must use discretion

 4    if you were going to talk to anybody about this program?

 5              THE DEFENDANT:  Other than undercover agent?  Can

 6    you repeated it, sir?

 7              MR. WATERSTREET:  Yes.

 8              The undercover told you that this was not a

 9    practice that was approved by the Department of Homeland

10    Security, correct?

11              THE DEFENDANT:  Yes, sir.

12              MR. WATERSTREET:  And he also told you you must

13    use discretion when talking to other people about this?

14              THE DEFENDANT:  Yes, sir.

15              MR. WATERSTREET:  And you replied that the student

16    understood he would not be attending classes and he just wanted

17    to continue to stay and live here, live in California?

18              THE DEFENDANT:  Yes, sir.

19              MR. WATERSTREET:  And that was -- do you recall

20    the name of the first person that you referred?

21              THE DEFENDANT:  I remember Bhanu Pasula.

22              MR. WATERSTREET:  Bhanu Pasula?

23              THE DEFENDANT:  Yes, sir.

24              MR. WATERSTREET:  B-H-A-N-U.

25              THE DEFENDANT:  Yes, sir.
```

```
 1                    MR. WATERSTREET:  P-A-S-U-L-A.

 2                    THE DEFENDANT:  Exactly, sir.

 3                    MR. WATERSTREET:  And he was one of your

 4    roommates?

 5                    THE DEFENDANT:  He's not my roommate, but he's my

 6    friend.

 7                    MR. WATERSTREET:  Okay.  But you had roommates in

 8    2017 as well, correct?

 9                    THE DEFENDANT:  Yes, sir.

10                    MR. WATERSTREET:  Did some of your roommates sign

11    up as well?

12                    THE DEFENDANT:  Exactly, sir.

13                    MR. WATERSTREET:  And who was that?

14                    THE DEFENDANT:  My roommates:  Vinesh Kumar --

15                    MR. WATERSTREET:  Vinesh Kumar, what's his last

16    name?

17                    THE DEFENDANT:  Pollisetty.

18                    MR. WATERSTREET:  Pollisetty.

19                    THE DEFENDANT:  I don't know some guys full names,

20    but I know Suresh Kandala, Vinesh Kumar, Bharath Kakireddy and

21    Nitesh Kumar.

22                    MR. WATERSTREET:  Those people eventually signed

23    up for school as well?

24                    THE DEFENDANT:  Some more names, but I can't

25    remember some names.
```

1            MR. WATERSTREET:  Okay.  Originally you were happy

2    with the price of $5,000 a year, but you heard that other

3    people were getting paid and you wanted to get paid for bring

4    students in as well, correct?

5            THE DEFENDANT:  Yes, sir.

6            MR. WATERSTREET:  And the agent said that any, if

7    you direct, refer, recruit any students that you would be paid

8    $500 per student, correct?

9            THE DEFENDANT:  Yes, sir.  And I called the

10   undercover agent.  He told me if you refer a student, you get a

11   refer bonus off.

12           MR. WATERSTREET:  But that's what you asked for.

13   You asked for -- originally you asked, at the very beginning

14   you asked for a referral fee, and you got your tuition reduced?

15           THE DEFENDANT:  Yes, sir.  Refer bonus.

16           MR. WATERSTREET:  And then you got upset when you

17   heard Avinash Thakallapally was being paid and you wanted to be

18   paid as well?

19           THE DEFENDANT:  Yes, sir.

20           MR. WATERSTREET:  Okay.  And during that

21   conversation you acknowledged that you had recruited for

22   another school in the past, Silicon Valley, recruited eight

23   students for $750.

24           THE DEFENDANT:  Yes, sir.

25           MR. WATERSTREET:  And he asked you what you

```
 1    thought was a fair price.  You wouldn't give him what you
 2    thought was a fair price, and he told you he'd call you back
 3    and let you know what he thought would be a fair price?
 4                   THE DEFENDANT:  Yes, sir.
 5                   MR. WATERSTREET:  Okay.  And he said $500, you
 6    countered with 600, and eventually agreed on 500?
 7                   THE DEFENDANT:  Yes, sir.
 8                   MR. WATERSTREET:  And shortly thereafter you sent
 9    applications for more students.
10                   Now, back in September 18th, I know you're
11    probably not going to remember the exact date, but around
12    September 18, 2017 you sent the school a list of students that
13    you had referred?
14                   THE DEFENDANT:  Yes, sir.
15                   MR. WATERSTREET:  And that was approximately 31
16    people?
17                   THE DEFENDANT:  I don't remember number, but I
18    sent him.
19                   MR. WATERSTREET:  If I showed you the document,
20    would that refresh your memory?
21                   THE DEFENDANT:  Yeah.  I can't remember.
22                   MR. WATERSTREET:  That was the attachment to the
23    e-mail?
24                   THE DEFENDANT:  Yes, sir.  Exactly.
25                   MR. WATERSTREET:  How many students were listed
```

 1    there.

 2              THE DEFENDANT:  Thirty-one students.

 3              MR. WATERSTREET:  And here's that e-mail you sent

 4    on September 18th, 2017?

 5              THE DEFENDANT:  Yes, sir.  Yes, sir.

 6              MR. WATERSTREET:  September 18, 2017.  That's from

 7    you, Santosh Sama?

 8              THE DEFENDANT:  Yes, sir.

 9              MR. WATERSTREET:  And then shortly thereafter in

10    November you sent another e-mail with an attachement, correct?

11    November 8th, 2017.

12              Is that, is this from you?

13              THE DEFENDANT:  Yes, sir.

14              MR. WATERSTREET:  And how many, how many students

15    were you able to recruit between, well, how many students do

16    you have listed now, the students you recruited?

17              THE DEFENDANT: Totally from my side it's like

18    hundred plus.

19              MR. WATERSTREET:  Excuse me?

20              THE DEFENDANT:  Totally from my side it's like

21    hundred plus.

22              MR. WATERSTREET:  A hundred plus?

23              THE DEFENDANT:  Yes, sir.

24              MR. WATERSTREET:  Okay.  So, within a short period

25    of time you went from 31 to 100.

```
 1                    THE DEFENDANT:  By the month of 2018?

 2                    MR. WATERSTREET:  Okay.

 3                    THE DEFENDANT:  2018 ending, 2018 March, April I

 4       recruited, I referred like hundred plus students.  Here are the

 5       hundred plus.

 6                    MR. WATERSTREET:  And then in January 27 -- excuse

 7       me.

 8                    And than January 22nd you came and met with the

 9       agents at the school, correct?

10                    THE DEFENDANT:  Yes, sir.

11                    MR. WATERSTREET:  And you brought your ledger with

12       you?

13                    THE DEFENDANT:  Yes, sir.

14                    MR. WATERSTREET:  And you allowed them to make a

15       copy of your ledger?

16                    THE DEFENDANT:  I gave them, but I don't know

17       whether they make a copy or not.

18                    MR. WATERSTREET:  Can you take a look at that

19       document and see if that is a copy of your ledger?

20                    THE DEFENDANT:  Yes, sir, it's my book.

21                    MR. WATERSTREET:  And that one has listed more

22       than 117 names on it?

23                    THE DEFENDANT:  Yeah.  It's different persons in

24       my indictment.  The other people in my indictment.

25                    MR. WATERSTREET:  I'm sorry.  I didn't understand
```

1    what you said.

2                MR. MANSOUR:  If I may interject at this time.

3                Are all the names in that book attributed to you?

4                THE DEFENDANT:  No, it's not.  All the names are

5    not for me.  It's other persons in the indictment.

6                MR. WATERSTREET:  Okay.  So -- - that's what I

7    was going to ask you about next.  Thank you.

8                MR. MANSOUR:  I think that's what he used.

9                MR. WATERSTREET:  I gathered that.

10               There are some notations in here.  You have the

11   letter "P" circled; you have "X" next to some names.

12               THE DEFENDANT:  Yes.

13               MR. WATERSTREET:  And you have "PH".

14               THE DEFENDANT:  Yeah.  It's a different persons in

15   indictment, "P", Prem Kumar, in front of it; so that "PH" and I

16   use initials of them for the identification.

17               MR. WATERSTREET:  Okay.  So, if there's a "P" next

18   to the name that is Prem Kumar Rampeesa, or is that somebody

19   else?

20               THE DEFENDANT:  Can I see?

21               MR. WATERSTREET:  Sure.

22               THE DEFENDANT:  Yeah.  Here I wrote the names of

23   Prem Kumar.

24               MR. WATERSTREET:  Okay.  "P" is Prem Kumar who?

25               THE DEFENDANT:  These are the names of Prem.  All

1    these names are in this list.  These are the total list and

2    this is a separate list of the person.

3                MR. WATERSTREET:  So on one of the pages of your

4    ledger you have the name "Prem" at the top and you have a list

5    of names that go down underneath --

6                THE DEFENDANT:  Yeah, you can see --

7                MR. WATERSTREET:  Let me finish my question.

8                -- underneath, correct?

9                THE DEFENDANT:  Yes.

10               MR. WATERSTREET:  And those are the people that

11   you said Prem, is that Prem Kumar Rampeesa?

12               THE DEFENDANT:  Yes, sir.

13               MR. WATERSTREET:  He's the one that brought these

14   people to you and that you eventually referred to the school?

15               THE DEFENDANT:  Yes, sir.

16               MR. WATERSTREET:  Okay.  Then -- and you also

17   marked it with "P" --

18               THE DEFENDANT:  Yes.

19               MR. WATERSTREET:  -- in the overall list?

20               THE DEFENDANT:  Yes, sir.  This "P" names are

21   all -- all these "P" names are here.

22               MR. WATERSTREET:  Okay.

23               Then you have, you have "PH" next, next to some of

24   the names.

25               THE DEFENDANT:  The PH names belongs to Phanideep

```
 1   Karnati.
 2             MR. WATERSTREET:  So these are people that Mr.
 3   Karnati provided to you and that you eventually referred to the
 4   school?
 5             THE DEFENDANT:  Yes, sir.
 6             MR. WATERSTREET:  And what about the "X"?  Do you
 7   know what that was?  You marked an "X" next to a name.
 8             THE DEFENDANT:  "X" is the people who did not join
 9   in the university.
10             MR. WATERSTREET:  Okay.  So these are people
11   who --
12             THE DEFENDANT:  No --
13             MR. WATERSTREET:  Are you sure about that?
14             THE DEFENDANT:  These "X" people belongs to me.
15   These are, these all can -- these all friends I have referred
16   to the university.
17             MR. WATERSTREET:  All the X's you referred?
18             THE DEFENDANT:  Yes.
19             MR. WATERSTREET:  To the university?
20             THE DEFENDANT:  Yes, sir.
21             Yes, sir.
22             MR. WATERSTREET:  So you and the -- so it's a
23   combination of you, Mr. Rampeesa, and Mr. Karnati that make up
24   for the bulk of this list?
25             THE DEFENDANT:  Yes, sir.
```

1          MR. WATERSTREET:  And Mr. Kandala as well,

2     correct?

3          THE DEFENDANT:  He did not give any students to

4     me, sir.

5          MR. WATERSTREET:  He did not?

6          THE DEFENDANT:  He did not give any students.

7          MR. WATERSTREET:  But you told the agents that he

8     was your partner and you were splitting the money fifty-fifty,

9     did you not?

10          THE DEFENDANT:  He is my friend so that I told

11     him.

12          MR. WATERSTREET:  No.  You said he is your partner

13     and you're splitting the money --

14          THE DEFENDANT:  I told him.  Undercover agent.

15          MR. WATERSTREET:  You told the agent that, right?

16          THE DEFENDANT:  Yes, sir.

17          MR. WATERSTREET:  And when you and Mr. Kandala

18     collected the money, you had Mr. Kandala take the $20,000 and

19     take the money, correct?

20          THE DEFENDANT:  Yes, sir.

21          MR. WATERSTREET:  And Mr. Kandala said that you,

22     both you and he had made a lot of money and you were sending a

23     lot of money over to India, correct?

24          THE DEFENDANT:  Yes, sir.

25          MR. WATERSTREET:  Now, do you recall how much

```
 1    money you were paid or you made off of bringing -- let me back
 2    up for one second.
 3              In June of 2018 you sent another list of the
 4    number of students that have been referred to you, by the
 5    school by you and the rest of your associates, did you not?
 6              THE DEFENDANT:  In --
 7              MR. WATERSTREET:  In June 8th, 2018 you sent a
 8    list of the students that you and your associates have referred
 9    to the school?
10              THE DEFENDANT:  Yes, sir.
11              MR. WATERSTREET:  I am going to show you a
12    printout of that.  Is that --
13              THE DEFENDANT:  Yes, sir.
14              MR. WATERSTREET:  -- the document that you sent?
15              THE DEFENDANT:  Yes, sir.
16              MR. WATERSTREET:  And you sent a list of 497
17    students that had been sent, correct?
18              THE DEFENDANT:  These students are including
19    enrolled students and nonenrolled students, who had --
20              MR. WATERSTREET:  These are the students that you
21    recruited and referred with you and your associates?
22              THE DEFENDANT:  Yes, sir.
23              MR. WATERSTREET:  Maybe not every single one of
24    them enrolled --
25              THE DEFENDANT:  Yes, sir.
```

1        MR. WATERSTREET:  -- but these were the students

2   that you referred?

3        THE DEFENDANT: Yes, sir, I referred.

4        MR. WATERSTREET:  497 students?

5        THE DEFENDANT:  Yes, sir.

6        MR. WATERSTREET:  Now, how much money were you --

7   as part of your agreement with the agents, you asked if you

8   could collect money from students and offset that amount from

9   what was owed by recruiting the students, correct?

10       A student paid you $2,500 for one of the quarters?

11       THE DEFENDANT:  Yes, sir.

12       MR. WATERSTREET:  You would be able to keep that

13  $2,500 and that would give you payment for five students that

14  you recruited, correct?

15       THE DEFENDANT:  Yes, sir.

16       MR. WATERSTREET:  Okay.  So, how much money

17  overall did you collect from students during the time you were

18  recruiting students to the school?

19       THE DEFENDANT:  Hundred plus thousand, sir.

20       MR. WATERSTREET:  Excuse me?

21       THE DEFENDANT:  Hundred plus.

22       MR. WATERSTREET:  Hundred thousand plus?

23       THE DEFENDANT:  Yes, sir.

24       MR. WATERSTREET:  In June 8, 2018 at a meeting you

25  said you got more than a 110,000 from, from the students,

1    correct?

2              THE DEFENDANT:  Yes, sir.  Hundred plus, maybe

3    around that.

4              MR. WATERSTREET:  Hundred thousand, hundred ten

5    thousand or more?

6              THE DEFENDANT:  Yes, sir.

7              MR. WATERSTREET:  And on top of that you were paid

8    by the school as well for the students that you had recruited

9    and your associates had recruited?

10             THE DEFENDANT:  Yes, sir.

11             MR. WATERSTREET:  Do you remember how much you

12   were paid by the school?

13             THE DEFENDANT:  Can you repeat it again, sir?

14             MR. WATERSTREET:  How much money did you collect

15   from the school directly paid in cash?

16             THE DEFENDANT:  Forty-nine thousand.

17             MR. WATERSTREET:  Two times you got $20,000,

18   correct?

19             THE DEFENDANT:  Yes, sir.

20             MR. WATERSTREET:  And one time you had 9,000 wired

21   to your bank account?

22             THE DEFENDANT:  Yes, sir.

23             MR. WATERSTREET:  Of those 497 students, how many

24   of those did you personally recruit?

25             THE DEFENDANT:  It will be like 121, 30 students.

1    Around 120 plus.

2              MR. WATERSTREET:  Okay.  How many did Suresh?

3              THE DEFENDANT:  Suresh Kandala he gave me two,

4    three friends to me.  It will be like not more than three or

5    four.

6              MR. WATERSTREET:  How many of Prem?

7              MR. MANSOUR:  Your Honor, at this time I'd just

8    ask what is -- what -- I would allow my client to talk directly

9    about what happened with him, and with anybody else, I don't

10   believe it's relevant at this time.

11             MR. WATERSTREET:  It's a conspiracy.

12             THE COURT:  I understand that, and all you have to

13   do is have one person that he's working with.  We don't need to

14   go into that much detail.

15             MR. WATERSTREET:  Okay.  I just want to make sure

16   I covered the bases, your Honor.

17             THE COURT:  Okay.

18             MR. WATERSTREET:  My apologies.

19             At the time that you were recruiting these

20   students to come to the school, you knew the students would be

21   issued an I-20 form, correct?

22             THE DEFENDANT:  Yes, sir.

23             MR. WATERSTREET:  And that I-20 form would allow

24   these students to stay in the United States?

25             THE DEFENDANT:  Yes, sir.

1          MR. WATERSTREET:  And you knew that by having the

2     students sign up at the University of Farmington, they would

3     not be attending classes?

4          THE DEFENDANT:  Yes, sir.

5          MR. WATERSTREET:  They would be obtaining a

6     document by fraud?

7          THE DEFENDANT:  Yes, sir.

8          MR. WATERSTREET:  And that they would be able to

9     use this fraudulent document to unlawfully stay here in the

10    United States?

11         THE DEFENDANT:  Yes, sir.

12         MR. WATERSTREET:  To leave the United States and

13    travel back to the United States?

14         THE DEFENDANT:  Yes, sir.

15         MR. WATERSTREET:  And by sending these students to

16    the school, you would be making money off of this as well?

17         THE DEFENDANT:  Yes, sir.

18         MR. WATERSTREET:  And this was for your on private

19    financial gain?

20         THE DEFENDANT:  Yes, sir.

21         MR. WATERSTREET:  And you also knew that when they

22    received these I-20's that was evidence of their authorization

23    to stay?

24         THE DEFENDANT:  Yes, sir.

25         MR. WATERSTREET:  And you knew that was, they were

1    obtaining it by fraud because they would not be obtaining any

2    education at the University of Farmington?

3                    THE DEFENDANT:  Yes, sir.

4                    MR. WATERSTREET:  And you joined this agreement

5    with your associates Suresh, Prem, Phanideep, on your own

6    accord.  You weren't forced to do this, correct?

7                    THE DEFENDANT:  No, sir.

8                    MR. WATERSTREET:  You weren't -- okay, I think I

9    asked a double negative, so I'm not sure.

10                   Were you forced to suggest any of these students

11   to go to University of Farmington?

12                   THE DEFENDANT:  I did not force anybody.

13                   MR. WATERSTREET:  No.  Were you forced to do this?

14   Did somebody force you to do this?

15                   THE DEFENDANT:  No, sir.  Nobody forced me.

16                   MR. WATERSTREET:  And you agreed with these other

17   people to do it as well, your associates to send students to

18   the University of Farmington?

19                   THE DEFENDANT: Yes, sir.

20                   MR. WATERSTREET:  Correct?

21                   THE DEFENDANT:  Yes, sir.

22                   MR. WATERSTREET:  I want to make sure I have the

23   date of one of the overt acts, your Honor.

24                   You indicated you picked up money --

25                   THE COURT:  All right.

```
 1              MR. WATERSTREET:  -- on more than one occasion

 2   from the school.  If I were to tell you on January 22nd, 2018

 3   you collected $20,000 from that school --

 4              THE DEFENDANT:  Yes, sir.

 5              MR. WATERSTREET:  -- would that be correct?

 6              THE DEFENDANT:  Yes, sir.

 7              MR. WATERSTREET:  And then on June 8, 2018 you

 8   collected another $20,000 for recruiting students?

 9              THE DEFENDANT:  Yes, sir.

10              MR. WATERSTREET:  And that's when you and Mr.

11   Karnati sat down and talked about recruiting students at, for

12   the University of Farmington?

13              THE DEFENDANT:  For referring students, sir.

14              MR. WATERSTREET:  I believe I've touched on

15   everything concerning that factual basis.

16              THE COURT:  All right.

17              MR. WATERSTREET:  Can I just followup on something

18   the Court talked about, his loss of rights, your Honor?

19              You understand that --

20              THE COURT:  Okay.  Go ahead.  Go ahead.

21              MR. WATERSTREET:  The judge told you you could be

22   deported, potentially deported from the United States?

23              THE DEFENDANT:  Yes, sir.

24              MR. WATERSTREET:  You understand that?

25              THE DEFENDANT:  Understand, sir.
```

```
 1                 MR. WATERSTREET:  You also understand that this
 2     could bar your reentry into the United States any time in the
 3     future?
 4                 THE DEFENDANT:  Yes, sir.
 5                 MR. WATERSTREET:  And it could also prevent you
 6     from ever becoming a U.S. Citizen?
 7                 THE DEFENDANT:  Yes, sir.
 8                 MR. WATERSTREET:  Thank you, your Honor.
 9                 THE COURT:  All right.  Mr. Mansour, do you have
10     anything else to add or cover here?
11                 MR. MANSOUR:  I do just briefly.
12                 I know there was -- if I may?
13                 THE COURT:  All right.
14                 MR. MANSOUR:  There were a lot of numbers that
15     were talked about just now, right?
16                 THE DEFENDANT:  Yes, sir.
17                 MR. MANSOUR:  A little bit louder, please.
18                 THE DEFENDANT:  Yes, sir.
19                 MR. MANSOUR:  When we were talking about referring
20     students to the university and talking about the hundred plus,
21     hundred and forty some numbers.
22                 THE DEFENDANT:  Yes, sir.
23                 MR. MANSOUR:  Were all of those for you directly
24     or with some of the other members of the group?
25                 THE DEFENDANT:  Some other members.
```

```
 1                    MR. WATERSTREET:  So that number of 100, 140 may
 2       not be as accurate as --
 3                    THE DEFENDANT:  Yes, sir.
 4                    MR. MANSOUR:  So you're saying what you just
 5       remember on those numbers?
 6                    THE DEFENDANT:  Yes, sir.
 7                    MR. MANSOUR:  Okay.  And the dollar amount when we
 8       were talking about the hundred thousand plus, and then the
 9       49,000 --
10                    THE DEFENDANT:  Yes, sir.
11                    MR. MANSOUR:  -- that money you're estimating at
12       this time; is that correct?
13                    THE DEFENDANT:  Yes, sir.
14                    MR. MANSOUR:  Is there -- and you're not hundred
15       percent accurate with regards to that?
16                    THE DEFENDANT:  Yes, sir.
17                    MR. MANSOUR:  Thank you.  I just wanted to clarify
18       those two points.
19                    THE COURT:  All right.  Then are counsel satisfied
20       with the factual basis and that I've complied with Rule 11 in
21       terms of taking the plea?
22                    MR. WATERSTREET:  Yes, your Honor.
23                    MR. MANSOUR:  Yes, judge.
24                    THE COURT:  Okay.  All right, then, I'm going to
25       find that the defendant is fully competent and capable of
```

1    entering an informed plea; that he's aware of the nature of the

2    charges and consequences of the plea, and that the plea of

3    guilty is a knowing and voluntary plea supported by an

4    independent factual basis as to each of the essential elements

5    of the offense.

6            So, I'm going to accept the plea and find the

7    defendant guilty of the offense.

8            And I'm going to refer the matter to the probation

9    department for a presentence investigation and report.

10           And I'm scheduling the sentencing on the case for?

11           THE CASE MANAGER:  Tuesday, September 10th at

12   2:30.

13           MR. WATERSTREET:  Your Honor, there's one matter

14   concerning the forfeiture.

15           THE COURT:  Yes.

16           MR. WATERSTREET:  If I may?

17           THE COURT:  All right.

18           MR. WATERSTREET:  Your Honor, as the Court knows,

19   there was not a Rule 11 Plea Agreement entered into.  There's

20   still an outstanding forfeiture provision.  And the United

21   States did seize approximate 1,300 some odd dollars from Mr.

22   Sama's bank account.  The government is going to seek the

23   forfeiture of that money and also an order for the balance of

24   the money that he unlawfully obtained as a result of this

25   criminal conduct.

1          THE COURT:  Okay.

2          All right.  Do you understand that, Mr. Sama?

3          That money is going to be forfeited or taken from

4    you that was involved in this case; do you understand that?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Okay.  And does that in any way affect

7    your desire to plead guilty here?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  You said it does affect your desire to

10   plead guilty?

11         MR. MANSOUR:  If I may, judge?

12         THE COURT:  Okay.

13         MR. MANSOUR:  With regards to the forfeiture of

14   the bank account, does that change your decision to plead

15   guilty at this time?

16         So, let me repeat the question.

17         So there was a forfeiture that we talked about

18   with regard to a Bank of America account?

19         THE DEFENDANT:  Yes.

20         MR. MANSOUR:  Roughly 1,000 or 1500 in that

21   account?

22         THE DEFENDANT:  Yes.

23         MR. MANSOUR:  The government is asking to take

24   that money in that account?

25         THE DEFENDANT:  Yes.

```
 1                    MR. MANSOUR:  Does that money being taken from you
 2      change your decision to plead guilty at this time?
 3                    THE DEFENDANT:  Yeah.  I'm agreeing.
 4                    MR. MANSOUR:  You're agreeing -- so, you still
 5      want to go forward with the guilty plea?
 6                    THE DEFENDANT:  Yes.  I want to go forward with
 7      it.
 8                    THE COURT:  And I'm just looking at a second
 9      forfeiture bill of particulars, and was 57,000 seized from an
10      account, or from Mr. Sama?
11                    MR. WATERSTREET:  I don't have those numbers in
12      front of me right now --
13                    THE COURT:  Okay.
14                    MR. WATERSTREET:  -- whether they were or not,
15      your Honor.
16                    THE COURT:  Okay.
17                    MR. MANSOUR:  If I recall, I don't believe that
18      was regarding Mr. Sama.  I think it was one of the other
19      defendants.
20                    THE COURT:  Okay.
21                    MR. WATERSTREET:  It may have been one of the
22      other defendants.
23                    MR. MANSOUR:  I think.
24                    MR. WATERSTREET:  Somebody else from my office is
25      handling the forfeiture, your Honor.
```

```
 1                    THE COURT:  Okay.
 2                    MR. WATERSTREET:  And I apologize for not having
 3      those numbers.
 4                    THE COURT:  Okay.  Because the document that I
 5      have says that it was in that amount.
 6                    But we'll clarify it before sentencing.
 7                    MR. WATERSTREET:  Thank you.
 8                    THE COURT:  Let's see.  Anything else we need to
 9      take up before we adjourn until sentencing?
10                    MR. MANSOUR:  I think if we deal with the United
11      States Attorneys on my end, just some property that he has,
12      some personal property in the meantime.
13                    THE COURT:  Okay.
14                    MR. WATERSTREET:  Nothing from the U.S.
15                    THE COURT:  Nothing more for the record, then?
16                    MR. WATERSTREET:  No.
17                    MR. MANSOUR:  No.  Thank you.
18                    THE COURT:  Then, we'll be in recess on the case
19      until sentencing in September.
20                    MR. MANSOUR:  Thank you, judge.
21                    THE COURT:  All right.  Thank you.
22                    THE DEFENDANT:  Thank you, sir.
23                    THE CASE MANAGER:  All rise.
24                    Court is in recess.
25              (At 11:44 a.m. proceedings concluded
```

1              C E R T I F I C A T E

2              I, Merilyn J. Jones, Official Court Reporter of the

3    United States District Court, Eastern District of Michigan,

4    appointed pursuant to the provisions of Title 28, United States

5    Code, Section 753, do hereby certify that the foregoing pages

6    1-44, inclusive, comprise a full, true and correct transcript

7    taken in the matter of the United States of America versus

8    Santosh Reddy Sama, 19-cr-20026 on Wednesday, May 15, 2019.

9

10

11                        /s/Merilyn J. Jones
                          Merilyn J. Jones, CSR, RPR
12                        Federal Official Reporter
                          231 W. Lafayette Boulevard
13                        Detroit, Michigan  48226

14   Date: June 3, 2019

15

16

17

18

19

20

21

22

23

24

25