UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

                                  Case No.: 19-CR-20026
                                  HON. Gershwin A. Drain

SANTOSH REDDY SAMA,

        Defendant.
_____/

## MOTION FOR COMPASSIONATE RELEASE
## UNDER 18 U.S.C. § 3582(c)(1)(A)(i)

Defendant Santosh Reddy Sama, a federal prisoner at Moshannon Valley Correctional Facility, through counsel, Jonathan Epstein, Federal Community Defender, moves this Honorable Court for a compassionate release pursuant to 18 U.S.C. sec. 3582©(1)(A) for extraordinary and compelling reasons.

In the midst of a resurgence of the Covid-19 pandemic, Mr. Sama suffers from diabetes, hyperlipidemia and hepatitis and further his presence in India is necessary for his wife, Mounika Reddy Sama, for his consent and care for life-saving surgery following a cardiac arrest, and a miscarriage where she lost their child. Mr. Sama respectfully seeks a release to an ICE detainer so that he can be deported forthwith to his family home in India to care for his ailing wife, whom on information and belief, may lose her life without his required care and support.

1

Defendant petitioned the Moshannon Valley Warden in April 2020 and provided all necessary documentation and, as more than 30 days have elapsed, has exhausted his administrative remedies. Such documents and exhibits are attached as exhibits and incorporated herein in support of said Motion. Defendant's current release date for deportation is October 12, 2020.

Section 3582(c)(1)(A) describes when a court may grant a prisoner compassionate release:

> [T]he court . . . may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that. . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The "applicable policy statements" mentioned in the statute are found in U.S.S.G. § 1B1.13. The comment to that section identifies the reasons for release that may rise to the level of "extraordinary and compelling":

> 1. Extraordinary and Compelling Reasons:
> Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

> (A) Medical Condition of the Defendant.
> (ii) The defendant is:
> (I) suffering from a serious physical or medical condition,
> (II) suffering from a serious functional or cognitive impairment, or;
> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
> (C) Family Circumstances.
> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

In this case, Sama pled guilty on May 15, 2019 to conspiracy to commit visa fraud in relation to the student visa program contrary to 18 U.S.C. sec. 371. Mr. Sama recruited others into the scheme and received in excess of $160,000 in profits. On September 10, 2019, he was sentenced to 24 months' custody of the Bureau of Prisons. He is currently 29 years old and housed at the Moshannon Valley Correctional Center in Phillipsburg, Pennsylvania. The facility houses low security non-violent criminal aliens. He has completed over 16 months or approximately 2/3 of his sentence. His release date to an ICE detainer is October 12, 2020. On

information and belief, Mr. Sama has an excellent conduct record with no infractions and is enrolled in educational courses. (Exhibit "1" Sentence Computation).

While Sama suffers from diabetes, hyperlipidemia and hepatitis (Exhibit "2" Medical Records), he seeks a compassionate release principally because of his young wife's failing health following a miscarriage procedure. While Ms. Sama is only 26 years old, she suffered a cardiac arrest and lost a pregnancy; she requires a surgical procedure being a hysterectomy and septum resection. (Exhibit 3, Letter and Medical Records of Mounika Reddy Sama).

Based on the combination of his and his wife's condition, subsection ©(ii) being Defendant's Family Circumstances mitigate in favor of a compassionate release to the ICE detainer for immediate deportation. Defendant is a citizen of India where he has a Master's Degree in computer science and is easily employable. In India, Defendant lives with his Wife Mounika Reddy Sama and his mother as his father has passed away. The family owns the small house where they live and the family is on government assistance. Further, in India, Sama's approval and consent are necessary to his wife's medical treatment. For these extraordinary and compelling reasons, Counsel requests the Motion be granted.

Moreover, another current threat to Mr. Sama is the current COVID-19 pandemic which has now emerged as an unprecedented health crisis affecting more severely those with compromised conditions like diabetes and hypertension. As the

Court is well aware, COVID-19 is a viral respiratory illness caused by a novel coronavirus first identified, in Hubei Province, China, in December 2019.[1] The virus is spreading exponentially. Overall, COVID-19's basic reproduction number is somewhere between 2.4 and 3.8, which means that "each newly infected person is estimated to infect on average 3 additional persons." Ex. B, Beyrer Dec. ¶ 10. Because of this, the virus is spreading at a rapidly accelerating rate. Reported recently, a second wave of the virus is causing new spikes in infectious disease in parts of the country.

As is well documented, COVID-19 is an extremely dangerous infectious disease particularly in confined prison spaces. The best estimate for its overall fatality rate—i.e., its fatality rate among all demographics—is 0.3-3.5%, "which is 5-35 times the fatality associated with influenza infection." Beyrer Dec. ¶ 5.[2] Fatality rates vary wildly, however, depending on both environmental and demographic risk factors. COVID-19 causes some population groups to die at far greater rates than others. A person's likelihood of dying from this disease varies dramatically depending on two key factors: (1) their demographic profile and (2) the environment where they live.

---

[1] *See* CDC, *What you need to know about coronavirus disease 2019 (COVID-19)*, available at https://www.cdc.gov/coronavirus/2019-ncov/downloads/2019-ncov-factsheet.pdf; *see also* NewScientist, *Covid-19*, available at https://www.newscientist.com/term/covid-19/.

[2] *See also* Nick Wilson et al., *Case-Fatality Risk Estimates for COVID-19 Calculated by Using a Lag Time for Fatality*, 26(6) EID Journal (prepublication June 2020), *available at* https://wwwnc.cdc.gov/eid/article/26/6/20-0320_article.

COVID-19's death rate goes up (1) the older you are and (2) the sicker you are. People who have heart conditions like hypertension, diabetes, or those who are immune compromised are at greatest risk.[3] In Wuhan, of the hospitalized population who ended up dying from COVID-19, 48% of them had hypertension, 31% had diabetes, and 24% had coronary heart disease.[4] Masa is more susceptible as his conditions place him at greater risk of death or serious injury.

For these reasons, the best epidemiological advice to deal with this national health emergency is that "[those with chronic conditions predisposing to severe COVID-19 disease . . . should be considered for release." Beyrer Dec. ¶ 18. Thus, incarceration poses a *grave public health threat* during this crisis. "COVID-19 poses a serious risk to inmates and workers in detention facilities." Beyrer Dec. ¶ 11. It is well-known in the epidemiological community that such facilities are "associated with high transmission probabilities for infectious diseases." Beyrer Dec. ¶ 11.[5] Outbreaks of the

---

[3] Centers for Disease Control & Prevention, *People Who Are at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited Apr. 16, 2020).

[4] *See* Fei Zhou et al., *Clinical course and risk factors for mortality of adult inpatients with COVID-19 in Wuhan, China: a retrospective cohort study*, Lancet (Mar. 11, 2020), *available at* https://www.thelancet.com/journals/lancet/article/PIIS0140-6736(20)30566-3/fulltext.

[5] *See also* Joseph A. Bick (2007). Infection Control in Jails and Prisons. *Clinical Infectious Diseases* 45(8):1047-1055, *at* https://doi.org/10.1086/521910; Laura M. Maruschak et al. (2015); Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12. NCJ 248491. Washington, D.C.: U.S. Department of Justice, Bureau of Justice Statistics, *at* https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf.

flu regularly occur in jails, and during the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases.[6]

When outbreaks occur in prisons, this leads directly to increased spread beyond the confines of jail. *See* Beyrer Dec. ¶ 12. "It is therefore an **urgent priority** in this time of national public health emergency to reduce the number of persons in detention as quickly as possible." Beyrer Dec. ¶ 17 (emphasis added).

In sum, in light of the continuous spread on Covid-19, this Court can and should reduce Sama's sentence and allow a deportation. The First Step Act empowers courts to grant compassionate release when a person's health conditions and family circumstances warrant release. They may release people when the BOP's provision of health care is inadequate. *See, e.g.*, *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *7 (M.D.N.C. June 28, 2019) (citing negligent treatment of breast cancer); *United States v. York*, No. 3:11-CR-76, 2019 WL 3241166, at *2 (E.D. Tenn. July 18, 2019) (noting allegation BOP ignored recommendations of outside specialists).

The COVID-19 pandemic alone is an extraordinary circumstance. And, when combined and in conjunction with Sama's health and his wife's health issues s from the COVID-19. Thus, courts are exercising their authority to grant release under

---

[6] *Prisons and Jails are Vulnerable to COVID-19 Outbreaks*, The Verge (Mar. 7, 2020) *at* https://bit.ly/2TNcNZY.

§ 3582(c)(1)(A)(i).[7] This Court should do the same for Mr. Sama. *See, e.g.*, *Samy v. United States*, No. 2:16-cr-20610-AJT-DRG, ECF No. 88, Pg. ID 1099–1102.

## CONCLUSION

Under § 3582(c)(1)(A), if this Court reduces Mr. Sama's sentence, the Court may allow a deportation. Mr. Sama respectfully requests this Court order his immediate release and deportation.

Respectfully Submitted,

**FEDERAL COMMUNITY DEFENDER**

s/Jonathan M. Esptein
Attorney for Sama
613 Abbott St., Suite 500
Detroit, MI 48226
Phone: 313-967-5542

Dated: June 29 2020,

---

[7] *See, e.g.*, *United States v. Tran,* 8:08-cr-197-DOC, Dkt. No. 405 (C.D. Cal. Apr. 10, 2020) (ordering compassionate release in light of BOP's inability to protect vulnerable inmates from COVID-19); *United States v. Smith,* No. 1:12-cr-133-JFK, Dkt. No. 197 (S.D.N.Y. Apr. 13, 2020) (granting release; finding exhaustion waivable and waived); *United States v. Trent,* Case No. 16-cr-178, ECF No. 106 (N.D. Cal. Apr. 9, 2020) (granting compassionate release in light of COVID-19); *United States v. Clagett*, Case No. 2:97-cr-265-RSL, Dkt. No. 238 (W.D. Wash. Apr. 9, 2020) (granting stipulated motion for compassionate release in light of severe risks posed by COVID-19); *United States v. Plunk*, Case No. 3:94-cr-36-TMB (D. Alaska Apr. 9, 2020) (granting compassionate release in light of COVID-19); *United States v. McCarthy*, 2020 WL 1698732 (D. Conn. Apr. 8, 2020) (granting compassionate release and waiving exhaustion requirement for defendant at serious risk from COVID-19.

**CERTIFICATE OF SERVICE**

This certifies that on the above date, the foregoing paper was filed under seal with the clerk of the Court using the ECF system, and copies were served upon all parties of record.

/s/Jonathan M. Epstein
Deputy Defender

Respectfully submitted,

**FEDERAL COMMUNITY DEFENDER OFFICE**

*/s/Jonathan M. Epstein*
Assistant Federal Defender
613 Abbott St., 5th Floor
Detroit, MI 48226
Phone: 313-967-5840
E-mail: jonathan_epstein@fd.org
P38101

Dated: June 29, 2020

**CERTIFICATE OF SERVICE**

Counsel certifies that on the above date, the foregoing paper was filed with the clerk of the Court using the ECF system, which will send notification to opposing counsel.

9