UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,          CASE NO. 19-CR-20026

           Plaintiff,          HON. GERSHWIN A. DRAIN

v.

SANTOSH REDDY SAMA,

           Defendant.

_____/

## UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (ECF No. 147)

Santosh Sama exploited and abused the United States student visa program so that he and others could remain and work in the United States illegally. He did so by attending, and personally recruiting over 300 students to attend, the University of Farmington – a university he knew was engaged in an illegal pay-to-play scheme. Sama was the most prolific recruiter in this case and received in excess of $160,000 in profits for his and his associates' efforts. He was sentenced to 24 months in prison.

Sama began serving his current sentence on September 10, 2019. He now moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A). His motion should be denied.

Sama does not qualify for compassionate release. For starters, because Sama has not satisfied the mandatory exhaustion requirement in 18 U.S.C.

1

§ 3582(c)(1)(A), the Court is barred from addressing his argument on the merits.
*United States v. Alam*, ___ F.3d ___, No. 20-1298, 2020 WL 2845694 (6th Cir.
June 2, 2020).  Sama also does not satisfy the substantive requirements for
compassionate release. "[T]he mere existence of Covid-19 in society and the
possibility that it may spread to a particular prison alone cannot independently
justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir.
2020). Although Sama's heightened risk from Covid-19 based on his recent
diabetes diagnosis qualifies as an "extraordinary and compelling reason" for
release under § 1B1.13(1)(A) & cmt. n.1(A), Sama is not otherwise eligible for
release. Sama's offense make him a danger to the community, which precludes
release under USSG § 1B1.13(2). And the § 3553(a) factors—which the Court
must also consider under § 3582(c)(1)(A)—likewise do not support release
because of the seriousness of this offense and the need to deter other foreign
students who are contemplating engaging in similar conduct, especially given the
media attention this case received.

The Bureau of Prisons has also taken significant steps to protect all inmates,
including Sama, from Covid-19. Since January 2020, the Bureau of Prisons has
implemented "a phased approach nationwide," implementing an increasingly strict
protocol to minimize the virus's spread in its facilities. *Wilson v. Williams*, ___
F.3d ___, No. 20-3447, 2020 WL 3056217, at *2 (6th Cir. June 9, 2020). And the

Bureau of Prisons has assessed its entire population to determine which inmates face the most risk from Covid-19, pose the least danger to public safety, and can safely be granted home confinement. As of July 13, 2020, this process has already resulted in at least 6854 inmates being placed on home confinement. *See* BOP Covid-19 Website. At least 100 of those inmates are from the Eastern District of Michigan. Especially given the Bureau of Prisons' efforts—and "the legitimate concerns about public safety" from releasing inmates who might "return to their criminal activities," *Wilson*, 2020 WL 3056217, at *11—the Court should deny Sama's motion for compassionate release.

## Background

Santosh Sama is a citizen of India who first traveled to the United States in 2014 on a temporary student visa known as an F-1 visa. (PSR ¶ 9). After attending multiple universities in the United States, Sama contacted the University of Farmington (an undercover university run by Agents of the U.S. Department of Homeland Security) and told the undercover Agent that he and his friends were just looking for a way to maintain status and were not interested in attending classes. (PSR at ¶ 16, 19, 20, 50) (Dkt. # 80 PgID 258-59). Sama enrolled in the University of Farmington and reached an agreement whereby he would receive $500 for every "student" he recruited. (Dkt. # 80 PgID 263-264). Neither he nor any of the students recruited by Sama attended classes at the University. (PSR ¶

3

18). Ultimately, Sama received profits – through a combination of tuition concessions and cash payments - in excess of one hundred and sixty thousand dollars from the University. (*PSR* at ¶19-27). Sama has no prior criminal history.

On September 12, 2019, Sama was convicted of conspiracy to commit visa fraud and harbor aliens for profit, in violation of 18 U.S.C. § 371.  This Honorable Court sentenced Sama to 24 months in prison, which represented a 13 month downward variance from the 37-46 month sentencing guideline range as calculated by the Court.

Sama began serving his prison sentence on September 10, 2019, and is currently incarcerated at Moshannon Valley Correctional Institution. He is 29 years old, and his projected release date is October 12, 2020. Sama now claims that he suffers from diabetes, hyperlipidemia (high cholesterol) and hepatitis. However, none of those medical conditions were raised at sentencing or included in the PSR. (PSR ¶ 48).  In fact, as of July 11, 2019, Sama denied any history of underlying medical conditions including diabetes and hypertension. (Exhibit 1). Nevertheless, Sama has moved for compassionate release, citing his newly diagnosed medical conditions, his spouse and mother's medical conditions, and the Covid-19 pandemic. Notably, as of July 13, 2020, there are zero (0) reported cases of Covid-19 among the inmates and staff at the Moshannon Valley Correctional Institution. https://www.bop.gov/coronavirus/

## Argument

### I.   The Court should deny Sama's motion for compassionate release.

Sama's motion for a reduced sentence should be denied. A district court has "no inherent authority . . . to modify an otherwise valid sentence." *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Rather, a district court's authority to modify a defendant's sentence is "narrowly circumscribed." *United States v. Houston*, 529 F.3d 743, 753 n.2 (6th Cir. 2008). Absent a specific statutory exception, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Those statutory exceptions are narrow. *United States v. Ross*, 245 F.3d 577, 586 (6th Cir. 2001). Compassionate release under 18 U.S.C. § 3582(c)(1)(A) is equally narrow.

*First*, compassionate release requires exhaustion. If a defendant moves for compassionate release, the district court may not act on the motion unless the defendant files it "after" either completing the administrative process within the Bureau of Prisons or waiting 30 days from when the warden at his facility received his request. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, ___F.3d ___, No. 20-1298, 2020 WL 2845694, at *1 (6th Cir. June 2, 2020). And as the Sixth Circuit recently held, this statutory exhaustion requirement is mandatory. *Alam*, 2020 WL 2845694, at *1–*4.

*Second*, even if a defendant exhausts, he must show "extraordinary and compelling reasons" for compassionate release, and release must be "consistent with" the Sentencing Commission's policy statements. 18 U.S.C. § 3582(c)(1)(A). As with the identical language in § 3582(c)(2), compliance with the policy statements incorporated by § 3582(c)(1)(A) is mandatory. *See Dillon v. United States*, 560 U.S. 817 (2010); *United States v. Jackson*, 751 F.3d 707, 711 (6th Cir. 2014). To qualify, a defendant must have a medical condition, age-related issue, family circumstance, or other reason that satisfies the criteria in USSG § 1B1.13(1)(A) & cmt. n.1, and he must "not [be] a danger to the safety of any other person or to the community," USSG § 1B1.13(2).

*Third*, even if a defendant is eligible for compassionate release, a district court may not grant the motion unless the factors in 18 U.S.C. § 3553(a) support release. 18 U.S.C. § 3582(c)(1)(A); USSG § 1B1.13. As at sentencing, those factors require the district court to consider the defendant's history and characteristics, the seriousness of the offense, the need to promote respect for the law and provide just punishment for the offense, general and specific deterrence, and the protection of the public. 18 U.S.C. § 3553(a).

### A. Binding authority prohibits the Court from granting release, because Sama has not satisfied the statutory exhaustion requirement.

The Court must dismiss Sama's motion, because he has not satisfied the exhaustion requirement for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Until recently, only the Bureau of Prisons could move for compassionate release. The First Step Act of 2018 amended the statute, permitting defendants to move for it too. First Step Act § 603(b), Pub. L. No. 115-319, 132 Stat. 5194, 5239 (Dec. 21, 2018).

But the provision permitting a defendant-initiated motion includes an exhaustion requirement. *Id.* A district court may not grant a defendant's motion for compassionate release unless the defendant files it "after" the earlier of (1) the defendant "fully exhaust[ing] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, ___F.3d ___, No. 20-1298, 2020 WL 2845694, at *2 (6th Cir. June 2, 2020). As the Sixth Circuit recently held in *Alam*, this statutory exhaustion requirement is "a mandatory condition" that "must be enforced" when the government raises it. *Id.* at *1–*4; *accord United States v. Raia*, 954 F.3d 594, 595–97 (3d Cir. 2020).

Section 3582(c)(1)(A) also means that an inmate may not move for compassionate release on a different ground than the one he raised during the administrative process. The whole point of § 3582(c)(1)(A)'s exhaustion requirement is to ensure that the Bureau of Prisons has the opportunity to evaluate and consider an inmate's request first, while allowing the inmate to seek relief in court if the Bureau of Prisons denies or fails to act upon the request. *Alam*, 2020 WL 2845694, at *4. So when "the factual basis in the administrative request and the motion before the court are different, a defendant does not satisfy the exhaustion requirement because he does not give the BOP an opportunity to act on the request before [he] brings his request to the courts." *United States v. Asmar*, No. 18-20668, Order at 7–8 (E.D. Mich. June 5, 2020); *accord United States v. Mogavero*, No. 15-00074, 2020 WL 1853754, at *2 (D. Nev. Apr. 13, 2020) ("Proper exhaustion necessarily requires the inmate to present the same factual basis for the compassionate-release request to the warden."); *United States v. Jenkins*, 2020 WL 1872568, at *1 (D. Neb. Apr. 14, 2020); *United States v. Valenta*, 2020 WL 1689786, at *1 (W.D. Pa. Apr. 7, 2020). An inmate seeking relief based on Covid-19 must first make *that* request to the Bureau of Prisons before seeking relief in court. *See Alam*, 2020 WL 2845694, at *4 (emphasizing the claim-specific nature of exhaustion).

Sama did not comply with § 3582(c)(1)(A)'s mandatory exhaustion requirement.  On or about April 30, 2020, Sama filed an administrative request for compassionate release. Sama's request was based only on the medical conditions of his wife and mother. On May 13, 2020, Sama's request was denied.  In the instant motion, Sama raises claims that have not yet been administratively exhausted, namely his own medical conditions and the Covid-19 pandemic.  As a result, Sama's motion for compassionate release should be dismissed for failure to exhaust. *Alam*, 2020 WL 2845694, at *5.

### B.    Sama is not eligible for compassionate release under the mandatory criteria in USSG § 1B1.13.

Even if Sama had exhausted his administrative remedies, compassionate release would be improper. Compassionate release must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Congress tasked the Sentencing Commission with "describ[ing] what should be considered extraordinary and compelling reasons for [a] sentence reduction" under § 3582(c)(1)(A), as well developing "the criteria to be applied and a list of specific examples" for when release is permitted. 28 U.S.C. § 994(t).

Because the Sentencing Commission has fulfilled Congress's directive in USSG § 1B1.13, that policy statement is mandatory. Section 3582(c)(1)(A)'s reliance on the Sentencing Commission's policy statements mirrors the language governing sentence reductions under 18 U.S.C. § 3582(c)(2) for retroactive

9

guideline amendments. *Compare* § 3582(c)(1)(A) *with* § 3582(c)(2). When Congress uses the same language in the same statute, it must be interpreted in the same way. *Marshall*, 954 F.3d at 830. In both contexts, then, the Sentencing Commission's restraints "on a district court's sentence-reduction authority [are] absolute." *United States v. Jackson*, 751 F.3d 707, 711 (6th Cir. 2014); *accord Dillon v. United States*, 560 U.S. 817, 830 (2010).

The First Step Act did not change that. It amended only *who* could move for compassionate release under § 3582(c)(1)(A). It did not amend the substantive requirements for release. *United States v. Saldana*, No. 19-7057, 2020 WL 1486892, at *2–*3 (10th Cir. Mar. 26, 2020); *United States v. Mollica*, No. 2:14-CR-329, 2020 WL 1914956, at *4 (N.D. Ala. Apr. 20, 2020). Section 1B1.13 remains binding.

Section 1B1.13 cabins compassionate release to a narrow group of non-dangerous defendants who are most in need. That policy statement limits "extraordinary and compelling reasons" to four categories: (1) the inmate's medical condition; (2) the inmate's age; (3) the inmate's family circumstances; and (4) other reasons "[a]s determined by the Director of the Bureau of Prisons," which the Bureau of Prisons has set forth in Program Statement 5050.50. USSG § 1B1.13 cmt. n.1. Program Statement 5050.50 provides that an inmate may initiate a request for consideration under 18 U.S.C. 4205(g) or 3582(c)(1)(A) only when there are

particularly extraordinary or compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing.

Here, Sama argues that the medical conditions of his spouse and mother are extraordinary and compelling circumstances and therefore justify compassionate release. But this information was included in the PSR and argued at sentencing by Sama as a basis to vary below the sentencing guidelines. (PSR ¶ 41, 44-45). In other words, the medical conditions of Sama's wife and mother are not particularly extraordinary or compelling because the Court already knew about this information at the time it imposed its sentence.

Moreover, The Covid-19 pandemic does not, by itself, qualify as the type of inmate-specific condition permitting compassionate release. The Bureau of Prisons has worked diligently to implement precautionary measures reducing the risk from Covid-19 to Sama and other inmates. *See Wilson v. Williams*, ___ F.3d ___, No. 20-3447, 2020 WL 3056217, at *2, *8 (6th Cir. June 9, 2020). Thus, "the mere existence of Covid-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *Raia*, 954 F.3d at 597; *cf. Wilson*, 2020 WL 3056217, at *11.

Sama also remains ineligible for compassionate release because he is a danger to the community. Section 1B1.13(2) only permits release if a "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." It thus prohibits the release of violent offenders, including most drug dealers. *See United States v. Stone*, 608 F.3d 939, 947–48 & n.6 (6th Cir. 2010); *United States v. Knight*, No. 15-20283, 2020 WL 3055987, at *3 (E.D. Mich. June 9, 2020). It also bars the release of many other defendants. An evaluation of dangerousness under § 3142(g) requires a comprehensive view of community safety—"a broader construction than the mere danger of physical violence." *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989) (per curiam). So even many "non-violent" offenders—such as those who have been involved in serial or significant fraud schemes—may not be released under § 3582(c)(1)(A). USSG § 1B1.13(2); *see Stone*, 608 F.3d at 948 n.7; *United States v. Reynolds*, 956 F.2d 192, 192 (9th Cir. 1992) ("[D]anger may, at least in some cases, encompass pecuniary or economic harm."); *United States v. Israel*, No. 17-20366, 2017 WL 3084374, at *5 (E.D. Mich. July 20, 2017) (recognizing that "economic harm may qualify as a danger" foreclosing release).

Adhering to § 1B1.13(2) is especially important given the current strain on society's first responders and the rise in certain types of crime during the Covid-19 pandemic. Police departments in many cities have been stretched to their limits as

officers have either contracted Covid-19 or been placed in quarantine. Some cities, including Detroit, have seen spikes in shootings and murders. Child sex predators have taken advantage of bored school-aged kids spending more time online. Covid-19-based fraud schemes have proliferated. There are real risks to public safety right now, and those risks will only increase if our community is faced with a sudden influx of convicted defendants.

Sama is not eligible for compassionate release.

### C.     The factors in 18 U.S.C. § 3553(a) strongly weigh against compassionate release.

Even when an inmate has shown "extraordinary and compelling reasons" and demonstrated that he is not dangerous, he is still not entitled to compassionate release. Before ordering relief, the Court must consider the factors set forth in 18 U.S.C. § 3553(a) and determine that release is appropriate. *See United States v. Knight*, No. 15-20283, 2020 WL 3055987, at *3 (E.D. Mich. June 9, 2020) ("The § 3553(a) factors . . . weigh against his request for compassionate release."); *United States v. Austin*, No. 15-20609, 2020 WL 2507622, at *3–*5 (E.D. Mich. May 15, 2020) (holding that the "[d]efendant's circumstances do not warrant compassionate release . . . under 18 U.S.C. § 3553(a)"); *United States v. Murphy*, No. 15-20411, 2020 WL 2507619, at *6 (E.D. Mich. May 15, 2020) (denying compassionate release because "the 18 U.S.C. § 3553(a) sentencing factors do not favor release"); *see also United States v. Kincaid*, 802 F. App'x 187, 188–89 (6th Cir. 2020)

(upholding a district court's denial of compassionate release based on the § 3553(a) factors). So even if the Court were to find Sama eligible for compassionate release, the § 3553(a) factors should still disqualify him.

Sama's decision to conspire to harbor aliens and commit visa fraud is a serious offense, as indicated by Congress's decision to authorize up to five years in prison for the offense. *See* 18 U.S.C. § 371; (PSR, ¶ 54). Specifically in this case, the F-1 student visa program is designed to promote and encourage foreign students to study at American institutions. Sama abused and exploited the program. He recruited others to the same. In exchange for finding and enlisting other students willing to commit fraud, Sama received more than $160,000 in profits and tuition credits. As a direct result of his actions, his recruited students—who were illegally working in the United States—deprived otherwise qualified individuals from obtaining employment or training.

According to an SEVP summary issued by U.S. Immigration and Customs Enforcement in November 2016, 1.23 million foreign students were studying in the United States on student visas in 2016, and 8697 schools were certified to enroll international students. Maintaining Samas 24 month sentence will continue to act as a deterrence to any of the other one million other foreign students that are currently studying on student visas in the United States who may contemplate engaging in similar conduct.

**III.    If the Court were to grant Sama's motion, it should order a 14-day quarantine before release.**

If the Court were inclined to grant Sama's motion despite the government's

arguments above, the Court should order that he be subjected to a 14-day

quarantine before release.

## Conclusion

Sama's motion should be denied.

Sincerely,

MATTHEW SCHNEIDER
UNITED STATES ATTORNEY

*s/Timothy P. McDonald*
Timothy P. McDonald
Assistant United States Attorney
211 W. Fort Street Suite 2001
Detroit, MI 48226
Phone: (313) 226-0221
Email: timothy.p.mcdonald@usdoj.gov

Dated: July 13, 2020

15

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2020, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the registered participants of the ECF system which will send notification of such filing to the registered participants of the ECF System as listed on the Court's Notice of Electronic Filing.

MATTHEW SCHNEIDER
UNITED STATES ATTORNEY

*s/Timothy P. McDonald*
Timothy P. McDonald
Assistant United States Attorney
211 W. Fort Street Suite 2001
Detroit, MI 48226
Phone: (313) 226-0221
Email: timothy.p.mcdonald@usdoj.gov

Dated: July 13, 2020

16